**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| PADDOCK ENTERPRISES, LLC,[1] | Case No. 20-10028 (LSS) |
| Debtor. | Ref. Docket Nos. 59 and 135 |

**REPLY OF THE PROPOSED FUTURE CLAIMANTS' REPRESENTATIVE
TO THE UNITED STATES TRUSTEE'S LIMITED OBJECTION TO THE
APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE
PROPOSED FUTURE CLAIMANTS' REPRESENTATIVE TO RETAIN
AND EMPLOY YOUNG CONAWAY STARGATT & TAYLOR, LLP
AS HIS ATTORNEYS, *NUNC PRO TUNC* TO THE PETITION DATE**

James L. Patton, Jr., the proposed legal representative for future asbestos claimants (the "**Proposed Future Claimants' Representative**" or "**Proposed FCR**"), hereby files this reply to the limited objection [Docket No. 135] (the "**Objection**") of the United States Trustee ("**UST**") to the *Application for Entry of an Order Authorizing the Proposed Future Claimants' Representative to Retain and Employ Young Conaway Stargatt & Taylor, LLP as His Attorneys, Nunc Pro Tunc to the Petition Date* [Docket No. 59] (the "**Application**"). The Proposed FCR respectfully submits that (a) the interests of Future Claimants will be best served by the Court promptly appointing a future claimants' representative ("**FCR**") and approving that representative's retention of counsel; (b) it is reasonable and appropriate based on the facts and circumstances of this case to appoint the FCR and approve retention of FCR counsel on a *nunc pro tunc* basis, and (c) contingent on the Court appointing Mr. Patton as the FCR, the Application should be approved effective as of the same date as Mr. Patton's appointment.[2]

---

[1] The last four digits of the Debtor's federal tax identification number are 0822. The Debtor's mailing address is One Michael Owens Way, Perrysburg, Ohio 43551.

[2] Capitalized terms not defined in this reply shall have the definitions ascribed to them in the Motion of Debtor for Entry of an Order Appointing James L. Patton, Jr., as Legal Representative for Future Asbestos Claimants, *Nunc Pro Tunc* to the Petition Date [Docket No. 58].

I. **Background and Relevant Dates**

1. On January 22, 2020, the Debtor filed a motion requesting that the Court appoint James L. Patton, Jr., as the legal representative of future asbestos claimants ("**FCR Motion**"). [Docket No. 58]

2. Also on January 22, 2020, Mr. Patton, as the Proposed FCR, filed the Application, seeking to retain Young Conaway Stargatt & Taylor, LLP ("**YCST**") as his counsel. [Docket No. 59]

3. The FCR Motion seeks Mr. Patton's appointment as the FCR *nunc pro tunc* to the Debtor's Petition Date. Likewise, the Application seeks retention of YCST as counsel to the Proposed FCR *nunc pro tunc* to the Petition Date.

4. The UST filed the Objection on March 6, 2020.

5. No party objects to the Proposed FCR's retention of YCST. Rather, the UST's Objection takes issue with (a) the timing of the filing of the Application, specifically that it was filed in advance of the Court's appointment of a future claimants' representative, and (b) the request that the Application be effective *nunc pro tunc* to the Petition Date. The Objection raises no compelling reason to delay approval of the Proposed FCR's retention of counsel or not to grant it with the requested effective date.

6. The Proposed FCR respectfully submits that, subject to the Court appointing Mr. Patton as the FCR *nunc pro tunc* to the Petition Date, the Application should be approved *nunc pro tunc* to the Petition Date. Both the FCR Motion and the Application seek *nunc pro tunc* relief for purposes of protecting the interests of Future Claimants. The Application was timely filed consistent with the practice and procedures of this Court. Moreover, the Application reasonably

seeks to have YCST retained as counsel effective as of the same date the FCR Motion seeks appointment of the Proposed FCR.

## II. Legal Standard for *Nunc Pro Tunc* Relief

7. As a court of equity, this Court has discretion to approve the retention of professionals on a *nunc pro tunc* basis when principles of equity so dictate. *See, e.g., In re TW, Inc.*, 2004 WL 115521, at *2 (D. Del. 2004) ("The power to grant relief retroactively is derived from the bankruptcy's equitable powers to insure a fair outcome.").

8. *Nunc pro tunc* relief is evaluated based on the facts and circumstances of each case and, in this circuit, is appropriate where the bankruptcy court "would have granted prior approval and that the delay in seeking approval was due to extraordinary circumstances beyond the professional's control." *In re Fleming Companies, Inc.*, 305 B.R. 389, 393 (Bankr. D. Del. 2004) (rejecting *nunc pro tunc* retention of a professional where the retention could not be approved at all due to conflicts of interest).

9. The Third Circuit has held that "*nunc pro tunc* approval should be limited to cases where extraordinary circumstances are present." *Matter of Arkansas Co., Inc.*, 798 F. 2d 645, 649 (3d Cir. 1986). In determining whether there are extraordinary circumstances, the bankruptcy court should consider: who bore responsibility for applying for approval, whether the applicant was time pressured to begin service without approval, the length of delay between when the applicant learned that initial approval had not been granted and requested retroactive approval from the court, the extent to which compensation to the applicant will prejudice innocent third parties, "and other relevant factors." *Id*.

10. While those factors are not all applicable here, the facts of this case warrant appointment of the Proposed FCR and the retention of YCST as his proposed counsel retroactive

3

to the Petition Date. The Objection should be overruled because it ignores precedent, frustrates the interests of the Future Claimants, and is refuted by the circumstances of this case.

**III.    Retention *Nunc Pro Tunc* to the Petition Date is Reasonable and Appropriate**

    **A.    *Nunc Pro Tunc* Retention Is Necessary to Protect the Interests of and Avoid Prejudice to the Future Claimants**

11.    Protecting the interests of future claimants is a primary focus of section 524(g). *See In re W.R. Grace & Co.,* 729 F.3d 311, 320 (3d Cir. 2013) (for section 524(g) relief, "a debtor must satisfy certain prerequisites designed to ensure that future asbestos claimants will be treated fairly"); *In re Federal-Mogul Global, Inc.*, 68 F.3d 355, 359 (3d Cir. 2012)("Congress codified the Johns–Manville trust mechanism as a "creative solution to help protect ... future asbestos claimants. . . ." (citing legislative history)). As the Third Circuit has noted, the future claimants' representative should be brought into the process early to ensure adequate representation of future claimants' interests. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 (3d Cir. 2013).

12.    As the FCR Motion and the Application set forth, Mr. Patton was retained pre-petition to represent and protect the rights of Future Claimants and Mr. Patton engaged YCST to serve as his counsel in that capacity. (FCR Motion at ¶¶8-11; Application at ¶¶17-19) Mr. Patton and YCST engaged in due diligence and analysis as part of efforts to investigate the possibility of negotiating a consensual plan of reorganization under section 524(g) of the Bankruptcy Code. (FCR Motion at ¶¶13, 16; Application at ¶¶18-19) Those efforts have continued since the Petition Date. (Application at ¶20).

13.    The FCR Motion and the Application seek to maintain Mr. Patton as the FCR and YCST as his counsel in order to protect the interests of Future Claimants, who are best served by an FCR and FCR counsel who are highly experienced and who are already familiar with the

4

Debtor and the facts and circumstances that led to this chapter 11 case. (FCR Motion at ¶¶19-26; Application at 21). Here, because there were pre-petition discussions and diligence, it is especially important to maintain a continuity in representation to avoid disadvantaging the Future Claimants by requiring a new FCR to start from scratch and repeat the diligence and discussions already engaged in by Mr. Patton and YCST, while the Debtor and other parties continue from a stance several steps ahead.

14. Preserving the continuous representation by experienced professionals who are familiar with this case is precisely why the FCR Motion and the Application seek approval as of the Petition Date. Mr. Patton and YCST have provided services on substantive matters since the Petition Date in reliance on the Debtor's seeking *nunc pro tunc* retention of the Proposed FCR to maintain seamless protection of the interests of the Future Claimants during the initial phase of this chapter 11 case.

15. Although the UST has objected to both the FCR Motion and the Application, the UST did not object to the FCR Motion on the basis that is seeks appointment of the FCR on a *nunc pro tunc* basis to the Petition Date. However, the UST argues that if the Court appoints Mr. Patton as the FCR, YCST should not be retained any earlier than the date of Mr. Patton's appointment. Following the UST's argument could result in the untenable situation where the Court would appoint Mr. Patton as the FCR as of the Petition Date (as the FCR Motion requests) but leave him without counsel from the Petition Date until the date of that order. While Mr. Patton is a highly capable FCR, there is no legitimate reason to temporarily deprive him of the advice of counsel.[3]

---

[3] The Objection does not raise an explicit concern about whether YCST should be compensated for services rendered prior to the date the Court approves its retention. Any question regarding compensation is better addressed when a fee application that delineates the services provided during this period is presented for the Court's approval.

16. The U.S. Trustee relies on a recent Supreme Court ruling which merely reiterated the standard for granting a motion on a *nunc pro tunc* basis. *Roman Catholic Archdiocese of San Juan, P.R. v. Acevedo Feliciano*, 140 S. Ct. 696, 701 (2020) (stating that "[f]ederal courts may issue *nunc pro tunc* orders, or 'now for then' orders, to 'reflect the reality of what has already occurred.'") (citing *Black's Law Dictionary* and *Missouri v. Jenkins*, 495 U.S. 33 (1990)). There is nothing new about this standard and it is exactly what the Proposed FCR requests here: to reflect the reality that he and his counsel have been operating prior to and since the Petition Date to provide Future Claimants with a voice in this proceeding and to ensure that their interests are protected at every stage.

17. The alternative - that the UST seems to advance - would be for due diligence, negotiations and other activities aimed at protecting Future Claimants that were begun pre-petition to come to a screeching halt upon the Debtor's filing of the petition for relief until such date as the bankruptcy court appoints the FCR and approves the FCR's retention of counsel. That alternative would unnecessarily delay and prolong the bankruptcy case, to the detriment of the Debtor's estate. It also would unfairly prejudice the Future Claimants whose interests would be unrepresented while other matters in the case proceed.

**B.    The Application Is Timely and Not Premature**

18. There is no merit to the UST's objection that the Application is premature simply because the Court has yet to appoint an FCR. (Objection at 1)

19. It is the established practice in this District for a proposed future claimants' representative to file an application to retain counsel prior to appointment and seek the retention to be effective as of the date of the FCR's appointment.[4] Indeed, this court has approved

---

[4] *See, e.g., In re Imerys Talc America*, Case No. 19-10289 (Bankr. D. Del. 2019); *In re Maremont Corp.*, Case No. 19-10118 (Bankr. D. Del. 2019); *In re Yarway Corp.*, Case No. 13-11025 (Bankr. D. Del. 2013); *In re Leslie*

retention of FCR counsel *nunc pro tunc* to the date of an FCR's appointment on numerous occasions.[5]

20. The Debtor has made clear from inception of this case that it seeks to reorganize under 11 U.S.C. §524(g), which requires the appointment of an FCR. Further, the Debtor filed the FCR Motion seeking appointment of an FCR effective as of the Petition Date. The Application was promptly filed on the same date as the FCR Motion.

21. The Application made clear that Mr. Patton's retention of YCST *nunc pro tunc* to the Petition Date was "[c]ontingent upon the Court entering an order appointing Mr. Patton as the Future Claimants' Representative, *nunc pro tunc* to the Petition Date." (Application at ¶6) Likewise, the FCR motion made clear that any retention by Mr. Patton of counsel and other professionals was subject to approval of the Court. (*See* FCR Motion at ¶1.b, Exhibit A (proposed order), and Exhibit B (Patton Declaration)).

22. The Objection argues that *nunc pro tunc* relief here is a legal impossibility because the Court could not have approved YCST's retention before the FCR was appointed. Mr. Patton agrees that the retention of YCST should not be made effective as of a date earlier than the appointment of the FCR. He respectfully submits, however, that both the FCR's appointment and YCST's retention should be made effective as of the Petition Date to protect the Future Claimants' interests. The UST raised no objection to the *nunc pro tunc* relief sought in the FCR Motion. It is thus legally possible for the Court to approve YCST's retention as of the Petition Date if the Court appoints the Proposed FCR as of the Petition Date.

---

*Controls, Inc.*, Case No. 10-12199 (Bankr. D. Del. 2010); *In re Durabla Mfg. Co.*, Case No. 09-14415 (Bankr. D. Del. 2009).

[5] *See, e.g., In re Imerys Talc America*, Case No. 19-10289 (Bankr. D. Del. 2019); *In re Maremont Corp.*, Case No. 19-10118 (Bankr. D. Del. 2019); *In re Yarway Corp.*, Case No. 13-11025 (Bankr. D. Del. 2013); *In re Leslie Controls, Inc.*, Case No. 10-12199 (Bankr. D. Del. 2010); *In re Durabla Mfg. Co.*, Case No. 09-14415 (Bankr. D. Del. 2009).

23. The UST points to *Fairbanks*, where the bankruptcy court declined to appoint an FCR's counsel prior to the date of the FCR's appointment and instead made the counsel's employment effective as of the FCR's appointment. *Fairbanks* is distinguishable from this case on several grounds. *Fairbanks* did not involve any pre-petition services. *Fairbanks* was the first case under section 524(g) in which the UST proposed alternate candidates to serve as the future claimants' representative, which led to depositions and an evidentiary hearing involving testimony by multiple candidates.

24. Fairbanks nominated Mr. Patton on November 20, 2018. The bankruptcy court appointed Mr. Patton as the FCR on April 17, 2019. At the request of the U.S. Trustee, Mr. Patton delayed filing an application to retain YCST as his counsel until after his appointment. Mr. Patton sought retention of YCST *nunc pro tunc* to November 20, 2018, because YCST represented Mr. Patton in supporting the debtor's motion to appoint the FCR and in diligence and plan discussions from that date onward. The *Fairbanks* court denied the *nunc pro tunc* relief and approved YCST's retention as of the date it appointed Mr. Patton as the FCR.

25. In any event, the result sought here is what was granted in *Fairbanks*: retention of YCST effective as of the same date of the FCR's appointment. The difference here is that we submit the effective date for both should be the Petition Date, thereby avoiding a months-long gap in representation of the Future Claimants' interests.

26. The Objection implies that the FCR's appointment and YCST's retention cannot be effective as of the Petition Date because they were not filed or granted on the Petition Date. There was no unreasonable delay with respect to either the FCR Motion or the Application, both of which were filed just over two weeks after the Petition Date. They were filed in accordance

with the established practice and procedure of this Court, and the Court has discretion to grant the requested *nunc pro tunc* relief.

27.     Bankruptcy practice in this District, as well as most others, counsels against considering the retention of professionals at the first day hearing.  *See In re Dailey Intern., Inc.*, 1999 WL 35140013 at *5 (Bankr. D. Del. 1999) ("retention of professionals should not be included in 'first day' motions, but rather should be reserved to a later date when other parties, including statutory committees, will have an opportunity to debate the merits of 'customized' proposed terms and conditions for retentions.").  Instead, first day hearings are intended to consider granting relief "which is minimally necessary to maintain the existence of the debtor, until such time as the debtor can effect appropriate notice to creditors and parties in interest."  *In re The Colad Group, Inc.*, 324 B.R. 208, 213 (Bankr. W.D.N.Y. 2005).

28.     The recent *Acevedo Feliciano* ruling does not overturn the practice of delaying professional retentions until parties in interest have had an opportunity for notice and an opportunity to be heard, and approving such retentions effective as of the Petition Date.  Rather, the ruling supports this practice, affirming the equitable power of bankruptcy courts to retroactively reflect the reality that counsel has been retained and that counsel's services have provided benefit to the debtor's estate since the Petition Date.

29.     As discussed above, the Proposed FCR, assisted by counsel, represented the interests of the Future Claimants prior to the Petition Date and continues to represent them.  To the same extent that debtors traditionally require the assistance of counsel prior to the date that they may file a retention application to approve such services, so too has the Proposed FCR required the assistance of YCST to adequately protect the interests of Future Claimants prior to the date that an application could be filed and approved to retain counsel.

**V.    There is No Basis to Delay Protection of the Future Claimants' Interests**

30. The only reason the UST cites for delaying appointment of the Proposed FCR and retention of YCST is that the UST has filed the Examiner Motion to review the so-called Corporate Modernization transaction. The UST insinuates that Mr. Patton and YCST may have had a role in the Corporate Modernization that may affect the independence and ability to represent the Future Claimants. (United States Trustee's Objection to Debtor's Motion for Entry of an Order Appointing James L. Patton, Jr., as Legal Representative for Future Asbestos Claimants *Nunc Pro Tunc* to the Petition Date [Docket 126] at 1-2)

31. Simultaneously with this reply, Mr. Patton and YCST are filing supplemental declarations affirming that neither Mr. Patton nor YCST had knowledge of the Debtor's plan to effect the Corporate Modernization and neither were involved in the formulation of that transaction. Accordingly, there is no basis to delay the approval of the Application because of the Examiner Motion.

32. To the contrary, it would serve the interests of the Future Claimants for the Court to promptly appoint an experienced and knowledgeable FCR and approve his proposed counsel. That way, the FCR can investigate the Corporate Modernization and evaluate its effect on the Future Claimants, whose interests are potentially affected by that transaction. That analysis can be conducted in connection with and will assist the progress of diligence and negotiations with the Debtor towards a consensual plan of reorganization.

33. To bootstrap its arguments for delay in retention of counsel for the FCR, the UST attempts to minimize the role of the FCR by arguing that FCRs "are individuals for whom there is no legal requirement to retain professionals, and their role in the case is narrowly focused compared to the far-reaching duties of debtors in possession and official committees." (Objection

at 7) This is in stark contrast to the UST's objection to the FCR Motion, where the UST highlights the critical role of an FCR as a "unique bankruptcy fiduciary" whose purpose "is to protect the due process rights of future claimants and to ensure that they receive effective and independent representation." (FCR Motion at ¶13) Also in its objection to the FCR Motion that UST argues that the FCR must act independently in representing interests against adverse parties and "will be likely be required to negotiate over the amount of funds that should be available to fund a trust, an issue that may be particularly contentious given the circumstances of the Corporate Modernization." (FCR Motion at ¶13)

34.     It is disingenuous for the UST to argue in one pleading that the role of the FCR is critical in protecting the constitutional rights of Future Claimants, and then argue in a separate pleading that the FCR's role is so inconsequential as not to warrant the prompt retention of professionals to assist in carrying out those duties, especially when the UST seeks to initiate an examination that may affect the assets available to satisfy future claims.

35.     The UST has raised no compelling reason to delay the appointment of the Proposed FCR or his requested retention of counsel as set forth in the Application. Accordingly, the Court should overrule the Objection and enter an order approving the Application.

**CONCLUSION**

WHEREFORE, based on the foregoing, the FCR respectfully requests that the Court enter an order granting the relief requested in the Application and such other and further relief as this Court may deem just and proper.

Dated: March 11, 2020            YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                              */s/ Edwin J. Harron*
Robert S. Brady (No. 2847)
Edwin J. Harron (No. 3396)
Sharon M. Zieg (No. 4196)
Sara Beth A.R. Kohut (No. 4137)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: rbrady@ycst.com
         eharron@ycst.com
         szieg@ycst.com
         skohut@ycst.com

*Proposed Counsel to the Proposed Future Claimants' Representative*