# EXHIBIT D

# LIQUIDATION ANALYSIS

US-DOCS\127822815

**Liquidation Analysis**

1) **Introduction**

The Debtor, with the assistance of its restructuring and legal advisors, has prepared this hypothetical Liquidation Analysis in connection with the Debtor's Plan and Disclosure Statement pursuant to chapter 11 of the Bankruptcy Code.[1] The Liquidation Analysis indicates the estimated recoveries that may be obtained by Classes of Claims and Equity Interests in a hypothetical liquidation pursuant to chapter 7 of the Bankruptcy Code upon disposition of assets as an alternative to the Plan. Accordingly, asset values discussed herein may be different than amounts referred to in the Plan. Meigs Investments, LLC ("**Meigs**"), a non-debtor subsidiary, has been included in the Liquidation Analysis, as the assets of Meigs provide potential residual value to the Debtor and its creditors.

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that the Bankruptcy Court find, as a condition to confirmation of the Plan, that each Holder of a Claim or Equity Interest in each Impaired Class: (i) has accepted the Plan; or (ii) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. In order to make these findings, the Bankruptcy Court must: (1) estimate the cash proceeds (the "**Liquidation Proceeds**") that a chapter 7 trustee (the "**Trustee**") would generate if the Debtor's chapter 11 case was converted to a chapter 7 case on the Effective Date and the assets of the Debtor's Estate were liquidated; (2) determine the distribution (the "**Liquidation Distribution**") that each Holder of an Impaired Claim or Equity Interest would receive from the Liquidation Proceeds under the priority scheme dictated in chapter 7; and (3) compare each Holder's Liquidation Distribution to the distribution under the Plan that such Holder would receive if the Plan were confirmed and consummated. Accordingly, asset values discussed herein may be different than amounts referred to in the Plan. The Liquidation Analysis is based upon certain assumptions discussed herein and in the Disclosure Statement.

THE DEBTOR MAKES NO REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THE ESTIMATES AND ASSUMPTIONS CONTAINED HEREIN, OR A TRUSTEE'S ABILITY TO ACHIEVE FORECASTED RESULTS. IN THE EVENT THAT THE CHAPTER 11 CASE IS CONVERTED TO A CHAPTER 7 LIQUIDATION, ACTUAL RESULTS COULD VARY MATERIALLY FROM THE ESTIMATES AND PROJECTIONS SET FORTH IN THE LIQUIDATION ANALYSIS.

2) **Basis of Presentation**

The Liquidation Analysis has been prepared assuming that the Debtor's chapter 7 liquidation would commence on or about June 6, 2022 (the "**Liquidation Date**"). The *pro forma* values referenced herein are projected as of May 31, 2022. The Liquidation Analysis assumes

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Plan of Reorganization for Paddock Enterprises, LLC Under Chapter 11 of the Bankruptcy Code* (the "**Plan**").

that if the Plan is not confirmed by the Liquidation Date, the Chapter 11 Case would be converted to a chapter 7 liquidation.

The Liquidation Analysis assumes that the sale or sales of substantially all assets of the Debtor and Meigs (the "**Sale**") will close on or around September 6, 2022. The determination of the hypothetical proceeds from the liquidation of assets is a highly uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by management and their advisors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtor and its management team. The Liquidation Analysis should be read in conjunction with the assumptions, qualifications, and explanations set forth in the Disclosure Statement and the Plan in their entirety, as well as the notes and assumptions set forth below.

The Liquidation Analysis assumes a timeline in which:

- on the Liquidation Date, the Debtor and Meigs commence an orderly wind-down process over a 3-month period to wind-down the Estate, at which point all book-keeping and claims distributions are finalized by September 6, 2022; and

- the Sale closes on or around September 6, 2022.

In preparing the Liquidation Analysis, the Debtor has estimated an amount of Allowed Claims – except that no value has been estimated for Claims in Class 3 for the reasons set forth in Note L below. The estimate of Allowed Claims in the Liquidation Analysis is based on the par value of each of these Claims. The estimate of the amount of Allowed Claims and Equity Interests set forth in the Liquidation Analysis should not be relied upon for any other purpose, including, without limitation, any determination of the value of any distribution to be made on account of Allowed Claims and Equity Interests under the Plan. The actual amount of Allowed Claims and Equity Interests could be materially different from the amount of Claims estimated in the Liquidation Analysis.[2]

For the avoidance of doubt, the Liquidation Analysis does not:

- include estimates for the tax consequences that may be triggered upon the liquidation and sale of assets in the manner described above (although such tax consequences may be material); or

- assign value to Claims in Class 3 for the reasons discussed in Note L.

**3) Liquidation Process**

The Liquidation Analysis assumes that substantially all of the assets of the Debtor and Meigs have been disposed of pursuant to the Sale. As such, a Trustee would still be required to

---

[2] For example, the cessation of business in a liquidation is likely to trigger certain claims that otherwise would not exist under a chapter 11 plan absent a liquidation.

oversee all other aspects associated with the winding down of the Debtor's Estate over a 3-month period. The Trustee's mandate would primarily include:

- operations during the wind down period of the portfolio of real estate investments in the quick service restaurant segment;

- oversight of the liquidation process and the related costs, including wind-down costs, retention costs, professional fees and other administrative fees;

- generation of cash proceeds from asset sales, including certain real property of the Debtor in Lapel, Indiana (the "**Lapel Property**"); and

- distribution of net proceeds generated from asset sales to the Holders of Claims and Equity Interests in accordance with the priority scheme under chapter 7 of the Bankruptcy Code.[3]

**4) Distribution of Liquidation Proceeds Available for Claimants**

Any net proceeds available after payment of chapter 7 administrative expenses would be allocated to the applicable Holders of Claims and Equity Interests in strict priority in accordance with section 726 of the Bankruptcy Code:

- Chapter 11 Administrative Expense and Priority Claims: includes post-petition, pre-conversion liabilities, environmental professional fees, priority taxes, and restructuring professional fees.

- Unsecured Claims: includes contract rejection claims, trade claims, environmental liabilities, asbestos-related claims, and various other unsecured liabilities held by third parties.

- Intercompany Claims: includes claims held by O-I Glass, Inc. ("**O-I Glass**"), Owens-Illinois Group, Inc., and Owens-Brockway Glass Container, Inc., against the Debtor related to shared services expenses and potential environmental contribution claims. These expenses relate to allocated employee costs for finance and accounting related activities, as well as payments made directly by O-I Glass on account of environmental professionals and expenses related to locations where O-I Glass has entered into remediation agreements, and potential claims against the Debtor as one of a number of affiliates potentially liable at one or more particular environmental sites.

- Existing Equity Interests: includes any equity security in the Debtor as defined in section 101(16) of the Bankruptcy Code, including all common stock or units, preferred stock or units, or other instruments evidencing an ownership interest in the Debtor.

**5) Conclusion**

---

[3] The liquidation process would include a reconciliation of claims asserted against the Debtor to determine the Allowed Claim amount per Class.

3

Under the Plan, there is one impaired class: Class 3 (Asbestos Claims). Under the proposed Plan, the Asbestos Trust is contemplated to receive contributions of $610 million, comprising $601.5 million of cash and $8.5 million in a note secured by a pledge of 100% of the equity interests in the Reorganized Debtor. These assets are projected to pay Asbestos Claims in full. In a liquidation under chapter 7 of the Bankruptcy Code, there is no guarantee of the amount of any funds that would be available for distribution to Holders of Asbestos Claims, and the assets estimated to be on-hand at the Debtor are not projected to be and/or may not be sufficient to pay all Holders of Asbestos Claims in full.[4] Given the projected payment in full of Class 3 Claims under the Plan, the Debtor has determined, as further elucidated in the following analysis, upon the Effective Date, the Plan will provide all Holders of Impaired Claims with a recovery that is not less than what they would otherwise receive pursuant to a liquidation of the Debtor under chapter 7 of the Bankruptcy Code. As such, the Debtor believes that the Plan satisfies the requirement of section 1129(a)(7) of the Bankruptcy Code.

---

[4] In addition, the Liquidation Analysis projects that two Classes of Unimpaired Claims (Class 4 and Class 5) and the Class of Equity Interests would also receive less in a chapter 7 liquidation than they would receive under the Plan.

The following Liquidation Analysis should be reviewed with the accompanying notes. The following tables reflect the rollup of the deconsolidated liquidation analysis for the Debtor and its non-debtor subsidiary, Meigs.

($ in 000s)

| Assets | Notes | Estimated Net Book Value | Est. Recovery Rate (%) Low | Est. Recovery Rate (%) High | Est. Liquidation Value ($) Low | Est. Liquidation Value ($) High |
|---|---|---|---|---|---|---|
| **Current Assets** | | | | | | |
| Cash and Cash Equivalents | [A] | $ 9,227 | 100% | 100% | $ 9,227 | $ 9,227 |
| Prepaid Expenses | [B] | 45 | 17% | 28% | 8 | 13 |
| Other Current Assets | [C] | 167 | 0% | 0% | - | - |
| **Total Current Assets** | | $ 9,439 | | | $ 9,235 | $ 9,240 |
| Intercompany Receivable - Support Agreement | [D] | 610,000 | 0% | 0% | - | - |
| Other Long-Term Assets | [E] | 7,993 | 82% | 92% | 6,564 | 7,364 |
| **Total Other Assets** | | $ 617,993 | | | $ 6,564 | $ 7,364 |
| **Total Assets** | | $ 627,433 | | | $ 15,799 | $ 16,603 |
| **Gross Distributable Liquidation Proceeds** | | | | | $ 15,799 | $ 16,603 |
| **Less: Liquidation Adjustments** | | | | | | |
| Post-Conversion Cash Flow | [F] | | | | $ (1,346) | $ (1,346) |
| Retention Costs | [G] | | | | (15) | (15) |
| Other Professional Fees | [H] | | | | (263) | (295) |
| Ch. 7 Trustee Fees | [I] | | | | (474) | (498) |
| **Total: Liquidation Adjustments** | | | | | $ (2,098) | $ (2,154) |
| **Total Liquidation Proceeds Available for Creditors** | | | | | $ 13,701 | $ 14,449 |

| | | Total Est. Claim $ Low | Total Est. Claim $ High | Recovery Est. % Low | Recovery Est. % High | | |
|---|---|---|---|---|---|---|---|
| **Recovery to Claim Holders** | | | | | | | |
| Beginning Distributable Value | | | | | | $ 13,701 | $ 14,449 |
| Administrative Claims | [J] | $ 4,515 | $ 4,515 | 100% | 100% | $ 4,515 | $ 4,515 |
| Remaining Amount Available for Distribution | | | | | | 9,186 | 9,934 |
| Other Priority Claims | [K] | 89 | 89 | 100% | 100% | 89 | 89 |
| Remaining Amount Available for Distribution | | | | | | 9,097 | 9,845 |
| Non-Priority Unsecured Claims | | | | | | | |
| Asbestos Claims | [L] | - | - | 0% | 0% | - | - |
| General Unsecured Claims | [M] | 31 | 31 | 43% | 47% | 13 | 15 |
| Environmental Claims or Causes of Action | [N] | 20,959 | 20,959 | 43% | 47% | 9,083 | 9,830 |
| Remaining Amount Available for Distribution | | | | | | - | - |
| Intercompany Claims | [O] | - | - | 0% | 0% | - | - |
| Remaining Amount Available for Distribution | | | | | | - | - |
| Equity Interests | [P] | - | - | 0% | 0% | - | - |
| Remaining Amount Available for Distribution | | | | | | - | - |
| **Remaining Distributable Value** | | | | | | $ - | $ - |

5

**Specific Notes to the Liquidation Analysis**

*Net Liquidation Proceeds*[5]

- **Note A – Cash & Cash Equivalents**
  - Consists of rollforward of book cash as of the Liquidation Date for both the Debtor and Meigs.
  - Includes all cash held at Fifth Third Bank and JP Morgan.
  - The projected cash balance for the Debtor as of May 31, 2022[6] reflects *pro forma* cash activity through the Liquidation Date.
  - The projected cash balance for Meigs as of May 31, 2022 is based on the latest *pro forma* business plan projections prepared by Meigs and its advisors.
  - The Debtor estimates a 100% recovery of the *pro forma* balance of cash.

- **Note B – Prepaid Expenses**
  - Consists of prepayments for fees and an existing retainer for the Debtor's Chief Restructuring Office ("**CRO**").
  - The Debtor estimates a full utilization of the prepaid expenses owed to the CRO.

- **Note C – Other Current Assets**
  - These amounts are related to the rent prepayment balance on account of the lease between the Debtor and O-I Glass on the Lapel Property, which lease the Debtor would not expect to renew in a liquidation for the reasons set forth in Note E.
  - The remaining amounts relate to shared services credits associated with the Shared Services Agreement between the Debtor and O-I Glass, which are assumed to have no recoverable value.

- **Note D – Intercompany Receivable – Support Agreement**
  - The Support Agreement, by its terms, does not provide a payment obligation for O-I Glass in a chapter 7 proceeding. Any attempt to litigate the terms of the Support Agreement or any claims against O-I Glass would likely involve significant professional fees by the Estate, a lengthy proceeding, and an uncertain outcome.
  - In an abundance of caution, the Debtor assumes that under a liquidation scenario it would not recover any value from O-I Glass on account of the Support Agreement.

- **Note E – Other Long-Term Assets**
  - The analysis assumes the Debtor is able to sell the Lapel Property to O-I Glass and that Meigs is able to sell its properties subject to triple net lease at 75% – 100% of book value.
  - The mineral rights owned by the Debtor are assumed to be sold at a *de minimis* value.

---

[5] Estimated net Liquidation Proceeds do not include an estimate for rights to insurance or indemnification proceeds, as the Debtor does not expect that insurance or indemnification recoveries would be higher in a chapter 7 liquidation than they would be pursuant to the Plan.

[6] May 31, 2022 is a proxy for the conversion date of June 6, 2022 due to the *de minimis* amount of activity assumed during the six days leading up to the conversion date.

*Liquidation Adjustments*

- **Note F – Post-Conversion Cash Flow**
    - The Debtor assumes that select chapter 11 professionals will continue to work post-conversion for the 3-month period at approximately 30% of the estimated 3-month average prior to conversion, totaling $1.4 million.
    - Meigs' post-conversion cash flow is based on the monthly rent amounts for its two properties and assumes continued rent payment in the low and high case totaling approximately $49 thousand for the 3-month period.

- **Note G – Retention Costs**
    - The analysis assumes that the only retention costs for the Debtor and Meigs are related to 3-months of the CRO's monthly fees, net of retainers.

- **Note H – Other Professional Fees**
    - Other professional fees include costs for real estate commissions on the sale of properties, as well as the costs to retain additional key professionals (attorney and financial advisor) required by the Trustee.
    - These fees are assumed to be 4.0% of Distributable Value[7] excluding cash balances, which amount to $263 thousand to $295 thousand in the low and high case, respectively.

- **Note I – Trustee Fees**
    - Trustee fees are assumed to be 3.0% applied against Distributable Value which amount to $474 thousand to $498 thousand in the low and high case, respectively.

*Claims*

- **Note J - Administrative Expenses**
    - Includes actual and necessary post-petition costs or expenses of preserving the Estate or operating the businesses of the Debtor, post-petition, pre-conversion costs, indebtedness or contractual obligations duly and validly incurred or assumed by the Debtor in the ordinary course of business, and compensation or reimbursement of expenses of Professionals to the extent allowed by the Bankruptcy Court under sections 327, 328, and 330(a) of the Bankruptcy Code.
    - Estimate of accrued professional fees based on the latest *pro forma* cash flow forecast projections prepared by the Debtor and its advisors.
    - The Debtor estimates that there will be approximately $4.4 million of chapter 11 administrative expenses remaining as of the Liquidation Date, and that the recoveries will be 100%.

---

[7] Distributable Value is defined as the total liquidation proceeds available for creditors after the impact of post-conversion cash flows, retention costs, professional and Trustee fees.

- **Note K – Other Priority Claims**
  - Includes outstanding Allowed Priority Tax Claims that have not been previously paid by the Debtor.
  - The Debtor estimates that there will be approximately $89 thousand of Other Priority Claims as of the Liquidation Date. Recoveries for these claims will be 100%.

- **Non-Priority Unsecured Claims (Classes 3-5)**
  - *Overview – Classes 3, 4, and 5*
    - Claims in Classes 3, 4, and 5 are treated *pari passu.*
    - Assuming Asbestos Claims are excluded from the Liquidation Analysis, Holders of General Unsecured Claims and Environmental Claims or Causes of Action against the Debtor are expected to recover between 43 – 47% in a hypothetical liquidation pursuant to chapter 7.
  - *Note L - Asbestos Claims (Class 3)*[8]
    - Represents personal injury and wrongful death claims against the Debtor directly or indirectly arising out of or in connection with the presence of or exposure to asbestos or asbestos-containing products based on alleged acts or omissions of the Debtor or any other entity for whose conduct the Debtor has or is alleged to have liability, prior to the Effective Date.
    - As of the Disclosure Statement filing date, Asbestos Claims remain unliquidated, contingent or disputed, and the aggregate amount of such Claims is unknown. The Debtor does not have sufficient information to estimate the amount of these Claims for purposes of this analysis, and therefore, no value has been assigned to Class 3, and no recovery value is therefore projected.
    - Conversion to chapter 7 would substantially impact the cost and efficiency of resolving the Asbestos Claims. Chapter 7 of the Bankruptcy Code contains no provision for establishing a trust or other efficient means to resolve such Claims.
    - Under chapter 7, the Asbestos Claims, or any portion of such Claims would need to be resolved through litigation, and the Trustee would need to engage litigation counsel to defend and liquidate those Claims. This differs significantly from the Plan, which proposes to establish the Asbestos Trust to resolve such Claims through the TDP. As such, litigation in a chapter 7 liquidation is likely to be more costly and time-consuming than resolving all Asbestos Claims through the Asbestos Trust to be established under the Plan.
  - *Note M - General Unsecured Claims (Class 4)*
    - Includes unpaid prepetition trade and professional fees and costs.
    - The Debtor estimates that there will be approximately $31 thousand of non-litigation related General Unsecured Claims as of the Liquidation Date.

---

[8] In the event of any inconsistency between the description of Asbestos Claims herein and the definition of Asbestos Claims in the Plan, the definition in the Plan shall govern.

- For purposes of the Liquidation Analysis, estimated recovery values do not contemplate any potential distributions on account of Asbestos Claims, given the inability to estimate such Claims. Accordingly, because General Unsecured Claims and Asbestos Claims are afforded the same priority of recovery, actual recovery values for General Unsecured Claims in a liquidation may be materially less than projected, depending on the Allowed amount of asserted Asbestos Claims.
- Litigation claims have also been filed; however, these claims are disputed by the Debtor and have been excluded from General Unsecured Claims within this analysis. No formal objection to these amounts has been filed at this time.

- *Note N - Environmental Claims or Causes of Action (Class 5)*
  - Includes unpaid prepetition trade and/or legal costs arising from prepetition environmental liabilities.
  - The Debtor estimates that there will be approximately $21.0 million of Environmental Claims or Causes of Action as of the Liquidation Date.[9]
  - For purposes of the Liquidation Analysis, estimated recovery values do not contemplate any potential distributions on account of Asbestos Claims, given the inability to estimate such Claims. Accordingly, because Environmental Claims or Causes of Action and Asbestos Claims are afforded the same priority of recovery, actual recovery values for Environmental Claims or Causes of Action in a liquidation could be materially less than projected, depending on the Allowed amount of asserted Asbestos Claims.

- **Note O – Intercompany Claims**
  - This analysis assumes no Intercompany Claims. In the event any Intercompany Claims were asserted and Allowed, they would receive no recovery.

- **Note P – Equity Interests in the Debtor**
  - Equity Interests consist of interests of any holders of any class of equity securities of the Debtor, represented by shares of common or preferred stock, limited partnership interests or other instruments evidencing an ownership interest in the Debtor, whether or not certificated, transferable, voting or denominated "stock" or a similar security, or any option, warrant or right, contractual or otherwise, to acquire any such interest. O-I Glass is the only known Holder of Equity Interests in the Debtor. No recovery is projected on account of Equity Interests in the Liquidation Analysis.

---

[9] All or substantially all Environmental Claims or Causes of Action are contingent, unliquidated, and/or disputed.