

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

Laurie Selber Silverstein  
Chief Judge

824 N. Market Street  
Wilmington, DE 19801  
(302) 252-2900

September 22, 2022

**VIA CM/ECF Notification**

| | |
|---|---|
| John H. Knight<br>Michael J. Merchant<br>Brendan J. Schlauch<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 N. King Street<br>Wilmington, Delaware 19801 | William E. Chipman, Jr<br>CHIPMAN BROWN CICERO & COLE, LLP<br>Hercules Plaza 1313 North Market Street,<br>Suite 5400<br>Wilmington, Delaware 19801 |
| Jeffrey E. Bjork<br>Amy C. Quartarolo<br>LATHAM & WATKINS LLP<br>355 South Grand Avenue, Suite 100<br>Los Angeles, California 9007 | Brad B. Erens<br>Morgan R. Hirst<br>Caitlin K. Cahow<br>JONES DAY<br>110 North Wacker Drive, Suite 4800<br>Chicago, IL 60606 |
| Allison L. Texter<br>SWARTZ CAMPBELL LLC<br>300 Delaware Avenue, Suite 1410<br>Wilmington, DE 19801 | Jeremy W. Ryan<br>R. Stephen McNeill<br>POTTER ANDERSON & CORROON LLP<br>1313 N. Market Street, 6th Floor<br>Wilmington, Delaware 19801 |
| Gregory M. Gordon<br>JONES DAY<br>2727 N. Harwood Street, Suite 500<br>Dallas, Texas 75201 | Garland S. Cassada<br>Richard C. Worf, Jr.<br>Kevin R. Crandall<br>ROBINSON, BRADSHAW & HINSON, P.A.<br>101 N. Tryon Street, Suite 1900<br>Charlotte, North Carolina 28246 |

Paddock Enterprises, LLC
September 22, 2022
Page 2

      Re:    <u>Paddock Enterprises, LLC (Case No. 20-10028)</u>
               <u>Letter Ruling Re: ECF 1518, 1543</u>

      Before me are two motions regarding three separate debtors in bankruptcy proceedings in North Carolina—Bestwall LLC,[1] Aldrich Pump LLC[2] and DBMP LLC.[3] Each of these three North Carolina debtors seek documents from Paddock Enterprises, LLC (or its agent), currently, a reorganized debtor in a case before me. Paddock as well as the Owens-Illinois Asbestos Personal Injury Trust ("O-I Trust"), the Owens-Illinois Asbestos Trust Committee ("O-I Committee") and the Future Claims Representative ("FCR") oppose the document requests.

***Background*[4]**

      Bestwall and Aldrich Pump separately seek electronic information and data contained in any claims database within Paddock's possession, custody or control "whose purpose is or was to track mesothelioma claims asserted against Paddock or Owens-Illinois before the Petition Date."[5] Both Bestwall and Aldrich Pump seek this information by way of subpoenas and after certain proceedings in their respective bankruptcy cases. While the circumstances of their separate bankruptcy cases differ, the differences do not affect this ruling.

      Separately, Bestwall and DBMP seek production of ballots that were submitted in the Paddock bankruptcy case in connection with confirmation of Paddock's Plan.[6]

      On July 27, 2022, Paddock filed Reorganized Debtor Paddock Enterprises, LLC's Motion for a Protective Order in Connection with Subpoenas and Requests for Claims-Related Information, or, in the Alternative, Motion to Quash [ECF 1518]. On August 5, 2022, the O-I Trust, O-I Committee and the FCR filed their own Joinder and Joint Motion of the Owens-Illinois Asbestos Personal Injury Trust, the Owens-Illinois Trust Advisory Committee and the Court-Appointed Future Claimants' Representative for a Protective Order or to Quash

---

[1] *In re Bestwall LLC* (Bankr. W.D.N.C. Case No. 17-31795) (LTB).
[2] *In re Aldrich Pump LLC, et al.* (Bankr. W.D.N.C. Case No. 20-30608) (JCW).
[3] *In re DBMP LLC* (Bankr. W.D.N.C. Case No. 20-30080) (JCW).
[4] I am writing for the parties and assume familiarity with the greater background and legal arguments made in the filings.
[5] Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding) in Bestwall bankruptcy case, Exh. A, definition of "Claims Data;" *see also* Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding) in Aldrich Pump bankruptcy case seeking documents regarding "individuals in the 'Matching Key' . . . identifying individuals whose mesothelioma claims the Debtors or their predecessors resolved. . ."
[6] Third Amended Plan of Reorganization for Paddock Enterprises, LLC Under Chapter 11 of the Bankruptcy Code [ECF 1400].

Paddock Enterprises, LLC
September 22, 2022
Page 3

Subpoenas [ECF 1543], which, together with the Reorganized Debtor's motion is referred to herein as the "Motion to Quash."

Paddock's self-titled designation as a Reorganized Debtor is correct. Paddock emerged from bankruptcy on July 8, 2022, when the Plan went effective. Notwithstanding, this saga did not begin post-bankruptcy. For Bestwall, it began at least in March 2022 when Bestwall served a subpoena on Paddock. For Aldrich Pump, it began in April 2022 when Aldrich Pump filed a motion in its bankruptcy case seeking permission to serve subpoenas. Notwithstanding, neither Paddock, the Paddock asbestos claimant committee or the Paddock FCR took action in this case prior to filing the Motion to Quash.

### A. *The Subpoenas*

### *Jurisdiction and Standing*

Before getting to the substance of the Motion to Quash, I must determine whether I have jurisdiction to hear it. Bestwall and Aldrich Pump argue that I do not have jurisdiction over the Motion to Quash because only the compliance court, as that term is used in Rule 45, has jurisdiction to rule on any motions seeking to quash or otherwise impact a subpoena. Paddock argues that I have jurisdiction because the Motion to Quash is related to its bankruptcy case as I must interpret the Plan and/or Plan documents, specifically, the Asbestos Records Cooperation Agreement [ECF 1295-2]. The O-I Trust, the O-I Committee and the FCR also argue that under the Barton Doctrine,[7] only this court can authorize discovery against Paddock, which they argue is an estate fiduciary.

On August 31, I held an oral argument during which the jurisdictional issues were discussed at length. I continue to believe, as I expressed then, that Rule 45 is not jurisdictional in nature. Rules do not confer jurisdiction. As the Supreme Court noted (albeit in a different context), Bankruptcy Rule 9030 and Civil Rule 82 both provide that the rules do not extend or limit the jurisdiction of the courts.[8] Instead, rules prescribe the method by which jurisdiction is to be exercised. Notwithstanding, rules can be relaxed when the ends of justice so require, but it appears relaxing the rules should be done sparingly.[9] I say "apparently" because no one briefed this topic.

Under Rule 45, the compliance court is the court charged with addressing a motion to quash. Again, while I had no briefing on the specific point, it does appear that the party issuing the subpoena unilaterally determines (certainly in the first instance) the court of compliance within the guardrails set in subsection (c). For a document request, a subpoena may command a production of documents, including electronically stored documents, within 100 miles of where

---

[7] *Barton v. Barbour*, 104 U.S. 126 (1881); *see e.g. In re: Eagan Avenatti, LLP*, 637 B.R. 502 (Bankr. C.D. Cal. 2022).
[8] *Kontrick v. Ryan*, 440 U.S. 443, 124 S. Ct. 906, 914 (2004).
[9] *Schacht v. United States*, 398 U.S. 58, 90 S. Ct. 1555 (1970); *Kontrick*, 124 S. Ct. at 916.

Paddock Enterprises, LLC
September 22, 2022
Page 4

the person resides, is employed or regularly transacts business. The place of service specified in the subpoenas issued by counsel for both Bestwall and Aldrich Pump lies within the Eastern District of Michigan.[10]

None of the cases cited by Paddock convince me that I, as the court sitting in Delaware and not the compliance court under Rule 45, can rule on the motion to quash if I were relying solely on Rule 45 for authority. In *SBN Fog*, Judge McNamara does state: "this Court, as the 'issuing court' simply is not authorized by any statute or rule of civil or bankruptcy procedure to interject itself into a discovery dispute involving the production of documents where the 'place of compliance' is not within Colorado *and the respondents are not the Debtors*."[11] But, the highlighted part of that sentence is, at best, *dicta*, as the party serving the subpoena was the committee in the case before him and the subpoenaed parties were "non-parties" to the bankruptcy case. He, too, rejects, the idea that Rule 45 is jurisdictional, and frames the issues as one of authority. I agree with Judge McNamara in that respect and conclude that Rule 45 does not provide me with authority to adjudicate the Motion to Quash.

Paddock alternatively argues that its motion is really one for a protective order under Rule 26. But Paddock does not state how that rule provides authority for me to entertain the subpoenas. Rule 26 governs discovery *among parties* and subsection (c), not surprisingly, provides that a *party* from whom discovery is sought may seek a protective order in the court where the action is pending. But, this is not discovery among parties and the Bestwall and Aldrich Pump bankruptcy cases are not pending here.

Perhaps recognizing this, Paddock also argues that jurisdiction lies in this court as the subpoena is "related to" its own bankruptcy case. In its reply,[12] Paddock argues that this is not a routine discovery dispute unrelated to the chapter 11 case, but the discovery seeks information of the claims that were the very reason Paddock filed its case such that the "close nexus" required by *Resorts International*[13] is the information itself. Paddock further argues that the "interplay" of the subpoenas with the Plan, confirmation order and Asbestos Cooperation Agreement provides the court with subject matter jurisdiction. The O-I Trust, the O-I Committee and the FCR join and adopt these arguments. They also argue that the Barton Doctrine required the North Carolina debtors to come to this court to seek permission to serve the subpoenas on Paddock. The North Carolina debtors assert this is a simple third-party discovery dispute.

---

[10] While this is somewhat gameplaying because Paddock's headquarters are in Ohio, it is not disputed that Paddock's headquarters is within 100 miles of the court. So, while perhaps not living up to the spirit of the rule, the subpoenas appear to be in technical compliance with the letter of the rule. Whether a court in Ohio would believe it could rule on the Motion to Quash, I make no comment.

[11] *In re SBN Fog Cap II, LLC*, 562 B.R. 771, 776 (Bankr. D. Colo. 2016) (emphasis supplied).

[12] Reorganized Debtor Paddock Enterprises, LLC's Reply in Support of Motion for a Protective Order in Connection with Subpoenas and Requests for Claims-Related Information, or, in the Alternative, Motion to Quash.

[13] *In re: Resorts Intern., Inc.*, 372 F.3d 154, 167 (3d Cir. 2004).

I'm not prepared to find in this case that the Barton Doctrine applies as I need not do so. While it's a close call, I conclude that I have subject matter jurisdiction to hear the Motion to Quash. No one argued that there is not jurisdiction over third party discovery if a subpoena is served on a debtor during the course of the case.[14] But, since the Motion to Quash was served post-confirmation, I need to explore that as well. In *Resorts International*, the Third Circuit states:

> whether a matter has a close nexus to a bankruptcy plan or proceeding is particularly relevant to situations involving continuing trusts, like litigation trusts, where the plan has been confirmed, but former creditors are relegated to the trust res for payment on account of their claims. To a certain extent, litigation trusts by their nature maintain a connection to the bankruptcy even after a plan has been confirmed. Matters that affect the interpretation, *implementation*, consummation, execution, or *administration* of the confirmed plan will typically have the requisite close nexus.[15]

The Court further states:

> where there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, *implementation*, consummation, execution or *administration* of a confirmed plan or incorporated litigation trust agreement, retention of post-confirmation bankruptcy court jurisdiction is normally appropriate.[16]

Looking only at the subpoenas themselves, one could argue that these are garden variety discovery disputes, which affect neither the implementation nor administration of a confirmed plan or incorporated trust agreement. But, that is not the case. The timing of the subpoenas, the

---

[14] Judge Whitley seems to take this position. In the DMBP bankruptcy case, Judge Whitley ruled (over objection) that he was the appropriate court to hear the DMBP asbestos committee's motion to quash Bestwall's subpoena issued to DMBP. Counsel for DMBP explained that while the bankruptcy court for the Western District of North Carolina (through Judge Beyer) was the issuing court, this district (through Judge Whitley) was not the compliance court. *In re DMBP, LLC*, May 26, 2020 Hr'g Tr. 104:13-22. Yet, Judge Whitley ruled:
> All right. Split decision on this one. I generally agree with the ACC when it comes to the, the preliminary arguments that you, are addressed in the joint reply that they filed here. I think this is an appropriate court to hear this motion. I think it is somewhat akin to what we're seeing in the other motions where the first shot comes to the bankruptcy court that has the case and the second goes to the compliance court. In this circumstance, Judge Beyer's got her issues and I've got mine and we have to decide them both, but the bottom line is if you are asking for relief that involves tasking the principals of a company and its professional and its data, then I think it's appropriate to put it here. So I agree with that [the Committee position].

*Id.* at 112:20-113:7. He also went on to find that the asbestos claimant's committee in the DMBP case had standing to be heard on subpoenas issued to DMBP. *Id.* at 112:8-21.

[15] *Resorts*, 372 F.3d at 167 (emphasis supplied).

[16] *Id.* at 168-69 (emphasis supplied).

subject matter of the subpoenas, the confidentiality and privilege issues raised by the subpoenas, and even the issue of standing regarding who can oppose the production of documents show that the subpoenas affect the implementation and administration of the recently-confirmed Plan which is in its nascent stages.

Having reviewed the Asbestos Records Cooperation Agreement and heard the testimony, I find the following. The Reorganized Debtor is required to provide the Trust with Access to the Asbestos Records (as both capitalized terms are defined in the agreement). The database that is the subject of the subpoenas is part of the Asbestos Records. For electronic records, such as the database, the Asbestos Records are to be provided by electronic media, electronic transfer or by direct access to a database. There are only three persons currently at O-I Glass who have a working knowledge of the database, each of whom are high level employees within the organization. The Reorganized Debtor is several weeks into the Access process under the Asbestos Records Cooperation Agreement, and it will take at least a few more weeks to complete the process. At this point in time, with respect to time devoted to Paddock, those persons are best focused on the transition of the records to the Trust, not third-party subpoenas. I conclude that the requests in the subpoena affect the implementation and administration of the Plan and the related litigation trust agreement.

I also conclude that the O-I Trust, the O-I Committee and/or the FCR have standing to object to the subpoenas. While the Reorganized Debtor still possesses the database (and may still possess and/or maintain the database in the future), per paragraph 5(a) of the Asbestos Records Cooperation Agreement, on the Effective Date, the Trust took ownership of all privileges belonging to the Debtor in the Asbestos Records. The uncontroverted testimony is that some of the contents of the database were covered by work product and many of the settlement agreements reached between Paddock and claimants contained confidentiality provisions. So, the protection of the database is not an academic exercise vis-à-vis the O-I Trust.[17]

***Burden***

The discovery requests now seek more stream-lined information on fewer claimants than originally requested. As I understand it, the information requested is:

Fields in the data base, to the extent they exist, of:
- Law firm or firms representing the Injured Party or Related Party
- Jurisdiction and state of filing
- Claim status (e.g. settled, dismissed, verdict, settlement pending payment)
- Date of Resolution
- Date on which settlement paid

---

[17] It may not have been necessary for the O-I Committee and the FCR to join with the O-I Trust in objecting to the subpoenas, but I find no harm in this instance in permitting them to be heard.

- Date exposure began
- Date exposure ended
- Manner of Exposure
- Occupation and industry when exposed
- Products to which Injured Party was exposed

Judge Beyer and Judge Whitley have already determined in their respective cases that the requested discovery is relevant. I will not second guess those determinations. The question before me is the burden of production and whether that either outweighs the relevancy determination or justifies imposition of expenses on the party issuing the subpoena. Both Bestwall and DMBP have already offered to pay the reasonable costs of the discovery.

Paddock argues that the burden of production is so significant that the discovery should be quashed in its entirety. While I do agree based on the testimony that there is a significant burden, I do not believe that it outweighs the relevance determinations. My conclusion that the burden is significant is based on Mr. Burns's testimony that the only three knowledgeable persons have major responsibilities for O-I Glass, and that in his experience using the database as the person in charge of Paddock's legacy liabilities, it takes five minutes to manually match claimants. My math shows that if a manual match is necessary for all 18,000 claimants, that time commitment is 900 hours.

Michelle Potter of KCIC testified that the discovery is not burdensome at all. She stated that she and her firm have handled these types of claimant searches and matches for many asbestos defendants over the years and that KCIC's knowledge of databases and ability to write programs to minimize manual matching significantly limits any burden. The North Carolina debtors suggest that Paddock should outsource the search and so costs should be minimal.

Ms. Potter was offered by Bestwall as an expert on how defendants in asbestos litigation typically access and store data on claims. Paddock objected to this testimony coming in as not relevant because Ms. Potter admittedly has no personal knowledge regarding Paddock or how it stores or maintains its database (other than what she has learned from listening to Mr. Burns's testimony). I heard Ms. Potter's testimony, but reserved on whether I would accept it. I declined to hear testimony offered by Aldrich Pump on its own experience responding to a nearly identical subpoena.[18] Having reviewed Ms. Potter's testimony I agree with Paddock that it is irrelevant as she has no knowledge of Paddock's database or practices. But, even if I were to accept her testimony, it would not change the result.

Mr. Burns's testimony was unrefuted. Except with respect to the task it is currently undergoing pursuant to the Asbestos Records Cooperation Agreement, Paddock has never exported the entire contents of the database to any person, including a third-party vendor. He

---

[18] Bestwall and DMBP are represented by the same law firm. They apparently served subpoenas on each other and had no objection to responding.

Paddock Enterprises, LLC
September 22, 2022
Page 8

testified that Paddock has never shared claimant level data that wasn't anonymized or aggregated with vendors or even experts. Mr. Burns also testified to the potential risk of such endeavors given Paddock's contractual confidentiality obligations and the nature of the data. I find this testimony significant to the dispute before me.

Bestwall and Aldrich Pump suggest that Paddock should be forced to outsource the matching exercise, or, at least, the reasonable cost should be determined or capped by what a vendor would charge to do it. The North Carolina debtors also emphasize that the information they want is not confidential. But, the database itself unquestionably contains personally identifiable information—social security numbers, names, birthdates, addresses as well as perhaps some medical information. In the circumstances here, where Paddock has not permitted access to that information by persons outside of its company, I would neither compel Paddock to outsource its response to discovery (even assuming I could) nor cap any expense of responding to the cost of retaining a third-party vendor. While some asbestos defendants may use the services of firms like KCIC, the evidence is that Paddock did not. Further, the North Carolina debtors suggest that five minutes per claimant to do a manual review is akin to the Cadillac of manual review. But, when asked, the North Carolina debtors confirmed that they are not content with a simple social security match. Rather, Bestwall and Aldrich Pump require further review and, perhaps, a meet and confer with Paddock in circumstances where there is not a perfect social security match. Mr. Burns also testified that certain of the information sought is not found in one field or the field may contain additional information. So, there is no question that a manual review will be necessary. I find credible Mr. Burns's testimony that a manual match will take five minutes per claimant.

On the other hand, responding to third-party discovery is a cost of doing business in the United States, so, I will not quash the subpoenas. Paddock will, however, be entitled to the reasonable expense necessary to respond to them. I will be the judge who determines what that reimbursement will be. No one has briefed me on how that should be determined, particularly in a situation where the time to respond to the subpoena diverts a high-level employee from otherwise necessary duties.[19]

As for the confidentiality of the information, I conclude that does not prevent discovery. Instead, procedures need to be put in place to ensure that the information is kept confidential and used only for legitimate purposes. It appears that procedures have already been put in place in the Bestwall and Aldrich Pump bankruptcy cases as modified following Chief Judge Connolly's *Bestwall* ruling. As such, there are at least three judges that have reviewed confidentiality protections. Unless Paddock the O-I Trust, the O-I Committee or the FCR brings me a specific objection to the existing protections in those cases, I will deem those protections sufficient.

---

[19] If Paddock or O-I makes a business decision to engage a third-party vendor to do the matching exercise, of course it may do so.

### B. *The Ballots*

The parties did not spend as much time on this issue in their papers and it was not the main focus of argument. Both Bestwall and DMBP conceded jurisdiction in this court.

The parties briefed this issue on the premise that ballots are public records. The authority for this position is found in transcripts in certain asbestos cases cited in the filings. The judges in those cases base their statements on the proposition that the balloting firm is an agent of the clerk's office, collecting ballots in its stead.

Having given some though to this reasoning, I believe this premise is incorrect as a general matter, but it certainly is in this case. As is typical, on the first day of the Paddock case, Debtors filed a motion to retain Prime Clerk LLC as claims and noticing agent.[20] That request was brought pursuant to 28 U.S.C. §156(c), which permits the Clerk of the Court to utilize facilities or services for the provision of notices, dockets and other administrative information to parties in bankruptcy cases at the expense of the estate. Our Local Rule 2002-1(f) requires the retention of a claims and noticing agent in certain circumstances and specifies the duties that can be delegated to a claims agent. As is not atypical, within the first few weeks of the case, Paddock also sought to retain Prime Clerk as its administrative agent. That request was brought under § 327 and related sections of the Code.[21]

Duties as a solicitation agent, tabulation of votes and preparing reports to be filed with the court in connection with confirmation fall in this second engagement, under § 327, in which Prime Clerk is the debtor's agent. The services to be provided per that application are specifically delineated as soliciting, balloting and tabulation of votes, among other things.[22] This conclusion is consistent with my experience in smaller cases in which ballots are mailed to the debtor and the debtor provides a certification regarding the outcome of the vote. The clerk plays no role in these cases.

Given my conclusion, I do not have the benefit of the parties' respective thoughts with respect to the discoverability of ballots or how to properly address personally identifiable

---

[20] Application of Debtor for Appointment of Prime Clerk as Claims and Noticing Agent [ECF 5].
[21] Application of Debtor for Entry of Order Authorizing Employment and Retention of Prime Clerk LLC as Administrative Advisor Effective as of the Petition Date [ECF 55].
[22] Per the application, the engagement also includes "providing such other processing, solicitation, balloting and other administrative services described in the Engagement Agreement, but not included in the Section 156(a) Application as may be requested by the Debtor, the Court or the Office of the Clerk of the Court." The Court certainly did not request any such services and there is no indication that the Office of the Clerk of the Court did either. It is not clear to me whether this provision is appropriate in a § 327 retention application.

Paddock Enterprises, LLC
September 22, 2022
Page 10

information that is contained therein.[23]  The parties should confer regarding a consensual resolution or a schedule for further short submissions addressing this topic.

Very truly yours,

*Laurie Selber Silverstein*

Laurie Selber Silverstein

LSS/cmb

---

[23] Having reviewed the form of ballot approved in connection with solicitation [ECF 1216-2], it requires name, address, birth date and the last four digits of a social security number.  It also contains an indication of disease level.